UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Susanne Pearce, M.D.,

Civ. File No. 01-665 (PAM/RLE)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

The Paul Revere Life Insurance Company,

Defendant.

---

This case arises out of Plaintiff's claim for residual disability benefits under a long-term disability policy issued through her previous employer and implicates the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. This matter is before the Court on cross-Motions for Summary Judgment. Plaintiff also seeks her attorney's fees pursuant to 29 U.S.C. § 1132(g). For the reasons that follow, the Court grants Plaintiff's Motion, denies her request for attorney's fees, and denies Defendant's Motion.

**BACKGROUND**[1]

Plaintiff Dr. Susanne Pearce is seeking residual disability benefits from her previous

[1] Generally, a court reviewing the denial of benefits in an ERISA case should not consider evidence outside of the administrative record. Conley v. Pitney Bowes, 176 F.3d 1044, 1049 (8th Cir. 1999) (noting that the focus of a review should be on the evidence available to the plan administrator at the time of its decision); Brown v. Seitz Foods, Inc., Disability Benefits Plan, 140 F.3d 1198, 1200 (8th Cir. 1998) (stating that even under a de novo review, consideration of additional evidence is discouraged). Nevertheless, both parties seek to expand the administrative record in differing ways. Because the proposed expansions are limited, the Court will consider the additional materials submitted by the parties.

FILED AUG 2 3 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD AUG 2 3 2002
DEPUTY CLERK

employer's insurance carrier, Defendant The Paul Revere Life Insurance Company ("Paul Revere"). Dr. Pearce suffers from severe, recurrent clinical depression that ultimately prevented her from working full time. She is a board-certified internal medicine physician who began working at the Duluth Clinic, LTD ("Duluth Clinic") in 1991 and became a shareholder of the clinic in 1994.

Dr. Pearce received her first treatment for depression from Dr. Robert Nesheim in June 1994. At that time, she was put on medication. She continued to see Dr. Nesheim throughout 1994 and 1995. In January 1996, Dr. Pearce took a vacation. When she returned, she discovered that she was not on the Duluth Clinic's active schedule. It is undisputed that the Duluth Clinic considered her to be on a paid leave of absence. She continued to receive her full salary through May 1996 and benefits through June 1999. Nevertheless, it is also undisputed that Dr. Pearce's last day of actual work at the Duluth Clinic was on January 25, 1996.

On March 29, 1996, Dr. Pearce was hospitalized for depression. She did not start work at another clinic until January 1997. The stress of full-time work was too much for her, however, and at Dr. Nesheim's direction, she was advised to reduce her hours. Indeed, although Dr. Pearce has held several jobs over the last few years, she has not worked more than 20 to 26 hours a week at any of them.

Dr. Pearce claims that she did not become aware of her potential eligibility for residual long-term disability benefits until the summer of 1999, during an arbitration for

short-term disability benefits. In 1999, she hired her present attorneys who, in April 2000, filed Dr. Pearce's claim for residual disability benefits with Paul Revere. On September 11, 2000, Paul Revere denied the claim. Following an administrative appeal of this decision, Paul Revere upheld its denial of Dr. Pearce's claim. Dr. Pearce has now brought the instant action against Paul Revere.

In its Motion for Summary Judgment, Paul Revere asserts that Dr. Pearce is not eligible for residual disability benefits because she was terminated on January 25, 1996, prior to the onset of her disability on March 26, 1996, and that it has been prejudiced as a result of Dr. Pearce's late notice and proof of loss. Additionally, Paul Revere claims that Dr. Pearce is not residually disabled within the meaning of the policy at issue. For her part, Dr. Pearce argues that she is entitled to summary judgment because she was merely on a paid leave of absence when she became disabled, Paul Revere cannot prove that it was actually prejudiced by her late notice and proof of loss, and she is residually disabled within the meaning of the policy. Dr. Pearce also seeks attorney's fees pursuant to 29 U.S.C. § 1132(g).

**DISCUSSION**

**A. Summary Judgment Standard**

Rule 56(c) provides that a motion for summary judgment shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). "Where the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., 475 U.S. at 586.

**B. Merits**

The parties agree that ERISA governs the policy at issue. The parties also agree that the Court should review the administrative decision to deny Dr. Pearce's claim de novo because the policy does not grant the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the policy. See Firestone Tire & Rubber Co. v. Broch, 489 U.S. 101, 111 (1989); Donoho v. FMC Corp., 74 F.3d 894, 898 (8th Cir.

1996).

### 1. Eligibility Under the Plan

Paul Revere maintains that Dr. Pearce was not an employee eligible for coverage under the policy at the time of her disability. Specifically, Paul Revere notes that under the policy "an employee's insurance automatically terminates on . . . the date [she] no longer works for the employer." (Mould Aff. Ex. A. at 731.)[2] An employee, in turn, is defined as "any person who works for the employer. An employee must be paid by the employer for work done at the employer's usual place of business or some other location which is usual for the employee's particular duties." (Id. at 691.) According to Paul Revere, because Dr. Pearce did not perform any duties at the Duluth Clinic after January 25, 1996, her eligibility for benefits ceased on that date. To bolster its argument, Paul Revere contends that although the Duluth Clinic continued to pay Dr. Pearce until May 1996 and continued her benefits until June 1999, it considered this arrangement as nothing more than a severance package. (Abelsen Aff. ¶ 3.) Thus, under Paul Revere's reading of the policy, Dr. Pearce was not covered on March 26, 1996, when she became disabled.

Although there is evidence in the administrative record establishing that the Duluth Clinic decided not to have Dr. Pearce work at the clinic after January 1996, it is undisputed that the Clinic considered Dr. Pearce to be on a paid leave of absence pending final

---

[2] Exhibit A to the Mould Affidavit is the administrative record in this matter. Citations to this record refer to the Bates number of the particular pages.

resolution of her employment status. (Mould Aff. Ex. A at 23.) The policy explicitly provides that coverage continues "[i]n the case of absence due to a paid Sabbatical or Leave of Absence." (Id. at 728.) In the face of this unequivocal policy language, Paul Revere's argument that Dr. Pearce was not an employee eligible for benefits under the policy is disingenuous. The fact that the Duluth Clinic may have subjectively considered the continuation of her salary and benefits a severance package does not alter the plain language of the policy. Accordingly, the Court finds that Dr. Pearce was an eligible employee at the time that she became disabled.

**2. Prejudice**

Paul Revere next argues that it has been prejudiced by Dr. Pearce's late filing of notice and proof of loss. Specifically, Paul Revere contends that: (1) Dr. Pearce's claims are barred by the statute of limitations; (2) timely notice and proof of loss are conditions precedent to eligibility for benefits under the plan; and (3) Paul Revere has been prejudiced because Dr. Pearce's late filing of notice and proof of loss deprived it of the opportunity to promptly investigate her claim and participate in or approve of her treatment.

a. Statute of Limitations

ERISA does not contain its own statute of limitations period. Adamson v. Armco, Inc., 44 F.3d 650, 652 (8th Cir. 1995). As a result, courts must borrow the most analogous state statute of limitations. Id. Although the parties in this case disagree about the applicable limitations period, even assuming that the shorter two-year period applies, see Wolfe v. 3M

Short-Term Disability Plan, 176 F. Supp. 2d 911, 915 (D. Minn. 2001) (citing Cavegn v. Twin City Pipe Trades Pension Plan, 223 F.3d 827, 830 (8th Cir. 2000)), the Court finds that Dr. Pearce's suit is not time-barred. Federal common law determines when an ERISA claim accrues. Bennett v. Federated Mut. Ins. Co., 141 F.3d 837, 838 (8th Cir. 1998). As a general rule, such a claim accrues "after a claim for benefits has been made and has been formally denied." Union Pacific R.R. Co. v. Beckham, 138 F.3d 325, 330 (8th Cir. 1998). Here, the administrative appeal of Dr. Pearce's claim was not denied until March 30, 2001. Therefore, Dr. Pearce's commencement of this suit in April 2001 was timely.

b. Notice and Proof of Loss as Conditions Precedent

In Minnesota, "an insurer must show prejudice from the insured's delay in giving notice of a claim or proof of loss, unless the notice and proof of loss requirements are conditions precedent for liability." Winthrop & Weinstein v. Travelers Cas. & Sur. Co., 993 F. Supp. 1248, 1256 (D. Minn. 1998) (citing Sterling State Bank v. Va. Sur. Co., 173 N.W.2d 342, 346 (1969)). Paul Revere asserts that the notice and proof of loss provisions in the policy at issue were conditions precedent to liability and that Dr. Pearce's late filing is, therefore, fatal to her claim.

The policy's notice and proof of loss provisions provide that

> [w]ritten notice of a claim for disability must be given to [Paul Revere]. . . . The notice must be received by [Paul Revere] within twenty days of the first date for which benefits are claimed. If [Paul Revere does] not receive notice within twenty days, the claim may be reduced or invalidated. If it can be reasonably shown that it was not reasonably possible to submit notice within

> the twenty day period and it is shown that notice was given as soon as possible, the claim will not be reduced or invalidated. . . .
>
> The claimant must file written proof of loss within ninety days of the start of the period for which [Paul Revere is] liable. . . . If proof of loss is not submitted and received by us within the required time period, the claim may be reduced or invalidated. If it can be shown that it was not reasonably possible to submit proof within the time period and it is shown that the proof was filed as soon as possible, the claim will not be reduced or invalidated.

(Mould Aff. Ex. A. at 709.)

It is uncontroverted that Dr. Pearce filed her notice and proof of loss nearly four years late. Dr. Pearce argues, however, that because both the notice and proof of loss provisions provide for an alternative to filing within the required time period–namely, showing that timely filing was not reasonably possible and that actual filing was done as soon as possible–these provisions cannot be deemed conditions precedent to liability under the policy. The Court agrees. The Minnesota Court of Appeals has held that similar policy language providing that the insured needed to inform the insurer of any accident "as soon as reasonably possible . . . does not create a condition precedent." North Star Mut. Ins. Co. v. Midwest Family Mut. Ins. Co., 634 N.W.2d 216, 220 n.1 (Minn. Ct. App. 2001). Although the policy at issue is more verbose than the policy in North Star, its import is identical: notice and proof of loss must be filed as soon as reasonably practicable. Accordingly, the notice and proof of loss provisions in Paul Revere's policy are not conditions precedent to liability under Minnesota law.

c. Actual Prejudice

As noted above, to defeat liability, an insurer must [generally] show prejudice from the insured's delay in giving notice of a claim. Reliance Ins. Co. v. St. Paul Ins. Cos., 239 N.W.2d 922, 924-25 (Minn. 1976); Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 347 (Minn. 2000) ("[W]hen an insured has failed to timely submit a proof of loss, absent express language making the failure to timely submit the proof of loss fatal to the rights of the insured, an insurer must show it was prejudiced to avoid its liability . . . .").[3] The purpose of notice of loss is to acquaint the insurer with the occurrence of the loss, and the purpose of proof of loss is to furnish the insurer with the necessary data to determine its liability. Sterling State Bank, 173 N.W.2d at 346. Thus, failure to give timely notice or furnish proof of loss may "prejudice the insurer in that lapse of time can deprive [it] of the opportunity for prompt investigation and impede [its] defense against fraudulent claims." Reliance, 239 N.W.2d at 924 (citation omitted); see also Sterling State Bank, 173 N.W.2d at 346 ("[I]t is only reasonable to require the insurer be given an opportunity for prompt investigation so as to protect itself against fraudulent claims, and while the matter is fresh in the minds of all, to appraise and determine a disposition by way of settlement or defense.").

Although the "[m]ere passage of time between an event and notification can be prejudicial, . . . such a determination is dependent on the circumstances of the case." Ryan

[3] The Court looks to Minnesota state law in determining whether Paul Revere was prejudiced because notice-prejudice rules are not preempted by ERISA. UNUM Life Ins. Co. of Am v. Ward, 526 U.S. 358, 364 (1999).

v. ITT Life Ins. Corp., 450 N.W.2d 126, 130 (Minn. 1990). The pivotal question is not how much time elapses, but rather what happens during that time. Hooper v. Zurich Am. Ins. Co., 552 N.W.2d 31, 36 (Minn. Ct. App. 1996). The burden of proving prejudice is on the insurer. North Star, 634 N.W.2d at 220 (citing Reliance, 239 N.W.2d at 925).

At the outset, relying on Noon Realty, Inc. v. Aetna Ins. Co., 387 N.W.2d 465, 467 (Minn. Ct. App. 1986), Paul Revere contends that it need not show that it was actually prejudiced, but instead need only show that it may have been prejudiced. Paul Revere claims that it may have been prejudiced because, during the four-year gap between the loss and notice and proof of the loss, potential witnesses may have become unavailable and the memories of available witnesses may have faded to such a degree that Paul Revere can no longer verify the circumstances surrounding Dr. Pearce's disability. Additionally, Paul Revere argues that it was not able to conduct an independent medical examination of Dr. Pearce and that it could not conduct surveillance of Dr. Pearce. Finally, Paul Revere argues that it was not given the opportunity to participate in Dr. Pearce's treatment and rehabilitation.

In asserting that it need only show possible prejudice from the late notice and proof of loss, Paul Revere overlooks the clear language of Minnesota cases stating that an insurer must show "actual prejudice . . . to defeat liability." North Star, 634 N.W.2d at 220 (quoting Reliance, 239 N.W2d at 925). Indeed, rather than doing away with the requirement of actual prejudice, the court in Noon Realty merely described what sort evidence was sufficient to

establish prejudice. In that case, the court determined that the insurer was prejudiced because there was sworn testimony that documents had been destroyed and witnesses to the events in question would be difficult to find because they no longer worked for the relevant company. Paul Revere has cited no Minnesota case to the Court that abolishes the absolute prejudice requirement, and the Court is aware of no such case. Paul Revere must, therefore, show more than the mere possibility of prejudice; it must show that there was a substantial likelihood of avoiding or minimizing its liability had Dr. Pearce timely filed notice and proof of loss. This Paul Revere has failed to do.

Paul Revere's claim that witnesses might not be available or that their recollection of events might have faded is undercut by Paul Revere's failure to provide any evidence that it sought out or interviewed potential witnesses. (See Etchison Dep. at 58.) Paul Revere cannot satisfy its burden of establishing prejudice by baldly asserting that reliable testimony regarding the circumstances of Dr. Pearce's disability might be difficult or impossible to obtain.

Likewise, Paul Revere has come forward with no specific evidence that an independent medical evaluation of Dr. Pearce made contemporaneously with her claim or surveillance of Dr. Pearce would have eliminated or reduced its liability. Essentially, Paul Revere argues that any time an independent medical evaluation cannot be performed at or near the time of disability or surveillance cannot be conducted, insurers are prejudiced because of the risk of "hindsight bias." (Pendergrass Aff. ¶ 3.) This unsupported conclusion,

however, contradicts Paul Revere's own claims manual which states that "[w]e need to establish why a specific action such as investigation or [an independent medical evaluation] at a certain point in time was critical to the evaluation of the claim." (Mould 2d Aff. Ex. A.) Additionally, Paul Revere's claim of possible "hindsight bias" ignores the fact that the person at Paul Revere originally handling the claim testified that there was nothing in the file warranting an independent medical evaluation (Mould Dep. at 27), and the doctor hired by Paul Revere to review Dr. Pearce's medical records concluded that

> [t]here is more than sufficient medical data to support the diagnoses of Major depression, recurrent and an Anxiety disorder NOS . . . There is also good description of symptom recurrence during medication free periods or in response to significant increases in psychosocial stressors. There is also congruence across providers for the stated diagnoses.

(Mould Aff. Ex. A. at 592.)

Finally, Paul Revere has not adduced sufficient support for its argument that its inability to participate in or approve of Dr. Pearce's treatment prejudiced it.[4] Paul Revere

---

[4] The policy provides that

> [w]ith respect to any disability caused or contributed to by a psychiatric condition . . . an employee will be considered to be disabled only if he is satisfactorily participating in a program of treatment or rehabilitation approved by us.

(Mould Aff. Ex. A at 744.) Although it might have been possible to argue that this provision creates an additional hurdle that claimants with psychiatric aliments must clear to be considered residually disabled, Paul Revere has not made such an argument. Rather, Paul Revere has merely argued that it has been prejudiced by Dr. Pearce's late notice and proof of loss because it could not participate in her treatment. Because the administrative record does not make clear the administrator's reasons for citing this provision, the Court is constrained by the arguments made by Paul Revere. As the Eighth Circuit has held, courts "will not permit ERISA claimants denied the timely and specific

merely claims that it might have been able to assist Dr. Pearce in returning to full-time work. Once again, however, Paul Revere provides no clue as to what actions it might have taken, in addition to or differing from those taken by the medical professionals treating Dr. Pearce, that would have achieved this goal. Alternatively, Paul Revere has made no showing that the actions taken by the medical professionals treating Dr. Pearce were somehow inappropriate.

In short, Paul Revere has made no credible or specific showing that it actually suffered any prejudice as a result of Dr. Pearce's late filing of notice and proof of loss. Although the Court recognizes that establishing prejudice always involves some supposition, in Minnesota insurers must come forward with more than a vague suspicion that they were harmed by late notice or proof of loss. In this case, Paul Revere's tautological arguments that it was prejudiced are insufficient to warrant summary judgment in its favor and, in the face of Dr. Pearce's cross-Motion, do not create genuine issues of material fact for trial. Accordingly, the Court finds that as a matter of law Paul Revere was not prejudiced by Dr. Pearce's late notice and proof of loss.

**3. Residually Disabled**

Paul Revere's final argument is that Dr. Pearce does not meet the definition of being residually disabled because she worked more than 20 hours a week in her chosen profession

---

explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for the purposes of litigation." Marolt v. Alliant Techsys., Inc., 146 F.3d 617, 620 (8th Cir. 1998).

and because there may have been intermittent periods when she could have worked full time.

The policy states, in pertinent part, that an employee is residually disabled if:

> 1. the employee is prevented, by the same injury or sickness which caused his [or her] disability, from performing one or more of the important duties of his [or her] own occupation on a full-time basis; and
> 2. the employee is under the care of a doctor; and
> 3. the employee works:
>    a. at his [or her] own occupation, but cannot perform one or more of the important duties of his [or her] own occupation on a full-time basis; or
>    b. at some other occupation; and
> 4. the employee does not earn more than 80% of his [or her] prior earnings[.]
>
> An employee must meet all four of these tests to be considered residually disabled.

(Mould Aff. Ex. A at 752.) According to Paul Revere, the relevant policy defines full-time work as working more than 20 hours per week. (Id. at 740.) Dr. Pearce, on the other hand, argues that the relevant policy defines full-time work as working more than 30 hours per week. (Id. at 276.)

At the request of the Court, the parties filed additional briefing on this issue. In light of that briefing, it is clear that Paul Revere has waived its argument that Dr. Pearce failed to meet the definition of being residually disabled. ERISA requires that any denial of a claim for benefits be written in a "manner calculated to be understood by the claimant" and contain "[t]he specific reasons for the denial." 29 C.F.R. § 2560.503-1(g)(1)(i). In the Eighth Circuit, courts "are free to ignore ERISA plan interpretations that did not actually furnish the basis for a plan administrator's benefit decision." Marolt, 146 F.3d at 620. Indeed, the Court

must focus on the actual reasoning of the policy administrators and may not "consider post hoc rationales." Conley, 176 F.3d at 1049; Marolt, 146 F.3d at 620.

In this case, Paul Revere did not argue prior to this litigation that Dr. Pearce failed to meet the definition of being residually disabled. (See Mould Aff. Ex. A at 549-553, 609-611.) Accordingly, the Court finds that Paul Revere has waived this argument and that Dr. Pearce is residually disabled under the policy. She is, therefore, entitled to long-term residual disability benefits under the policy.

**4. Attorney's Fees**

Dr. Pearce concludes by requesting that the Court award her attorney's fees pursuant to 29 U.S.C. § 1132(g), which provides for the discretionary award of fees to the prevailing party in an ERISA case. She contends that under this section a prevailing plan beneficiary or participant should presumptively get attorney's fees unless special circumstances would render such an award unjust. See, e.g., Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1356 (8th Cir. 1980). Sitting en banc, however, the Eighth Circuit very recently overruled Landro and its progeny. Martin v. Ark. Blue Cross & Blue Shield, __ F.3d __, No. 00-3420, 2002 WL 1878378, * 3 (8th Cir. Aug. 16, 2002). "[The] use of several non-exclusive factors best facilitates the exercise of the district court's discretion in ERISA cases. We overrule Landro's holding to the contrary." Id.

In determining whether an award of fees to Dr. Pearce is appropriate, then, the Court considers the following factors: (1) the degree of Paul Revere's culpability or bad faith; (2)

the ability of Paul Revere to satisfy an award of fees; (3) whether an award of fees against Paul Revere would deter others from acting in similar circumstances; (4) whether Dr. Pearce sought to benefit all participants and beneficiaries of the plan or resolve a significant legal question; and (5) the relative merits of the parties' positions. Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984). Dr. Pearce has not alleged, and no legitimate allegation could be made, that Paul Revere acted in bad faith when it denied her claim. Although the Court has determined that Dr. Pearce is entitled to benefits under the policy, Paul Revere has made good faith arguments to the contrary. Accordingly, the first, third, and fifth factors weigh against awarding fees in this case. Similarly, Dr. Pearce has not argued, nor could she, that she acted to protect the interests of other insureds under the policy or that she sought to resolve a significant legal question. Accordingly, the fourth factor weighs against an award of fees. Standing alone, the fact that Paul Revere could likely pay any award of fees made against it does not warrant such an award. Because there are no other relevant considerations in this case, the Court denies Dr. Pearce's request for attorney's fees.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion Summary Judgment (Clerk Doc. No. 16) is **DENIED**;
2. Plaintiff's Motion for Summary Judgment (Clerk Doc. No. 22) is **GRANTED**; and

3. Plaintiff's request for attorney's fees pursuant to 29 U.S.C. § 1132(g) is **DENIED**.

Dated: August 23, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: AUG 2 3 2002

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995